## The City of Chariton v. Barber.

1. **Municipal Corporation**: CRIMINAL LAW: PUNISHMENT OF CRIMES. The power to suppress and restrain disorderly houses, etc., conferred upon cities by section 456 of the Code, does not authorize the passage of an ordinance declaring the keeping of such a house a misdemeanor, and imposing a punishment by fine and imprisonment for the offense.

2. ——: ——: ——. Neither does a city possess the power to pass such an ordinance under the provisions of section 482, which authorizes the passage of ordinances to improve the morals and order of the community.

*Appeal from Lucas District Court.*

THURSDAY, SEPTEMBER 23.

THE defendant was charged, in an information filed in the office of the mayor of the city, with the violation of an ordinance of the city providing punishment for the offense of keeping a house of ill-fame. The cause was sent on a change of venue to a justice of the peace, where the defendant was, upon a trial, convicted and fined, and an order made that he be committed until the fine and costs were paid. Upon an appeal to the District Court a demurrer, upon the ground that the city had no authority to pass the ordinance under which the defendant was convicted, was sustained, and defendant was discharged. From the judgment of the District Court the city appeals.

*Dell Stewart, City Solicitor*, for appellant.

*Mitchell & Penick*, for appellee.

BECK, J.—I. An ordinance of the city of Chariton provides that if any one shall, within the city, " keep any bawdy house or house of ill-fame, or house of assignation, or shall lease or let any house for such purpose, or permit any house under his control to be so used" * * * * * *

The City of Chariton v. Barber.

he " shall be deemed guilty of a misdemeanor, and, upon
conviction, shall be fined in a sum not less than one, nor
more than fifty, dollars, and costs of prosecution, and stand
committed," etc.

The information charges that defendant did, in violation of
this ordinance, in the city of Chariton, keep a house of ill-
fame.

The demurrer brought in question the authority of the
city council to pass the ordinance. The District Court held
that such authority is not conferred by the statutes of the
State.

We will proceed to consider the questions presented by
counsel in argument upon this appeal.

II.   Code, § 456, confers upon cities power " to suppress
1. MUNICIPAL and restrain disorderly houses, houses of ill-fame,
corporations:
criminal law : billiard tables, nine or ten pin alleys, and to au-
punishment
of crime.     thorize the destruction of all instruments or de-
vices used for the purpose of gaming."

Code, § 482, is in these words:

" Municipal corporations shall have power to make and
publish, from time to time, ordinances, not inconsistent with
the laws of the State, for carrying into effect or discharging
the powers and duties conferred by this chapter, and such as
shall seem necessary and proper to provide for the safety,
preserve the health, promote the prosperity, improve the
morals, order, comfort and convenience of such corporation
and the inhabitants thereof, and to enforce obedience to such
ordinances by fine not exceeding one hundred dollars, or by
imprisonment not exceeding thirty days."

The authority of the city to pass the ordinance in question,
plaintiff claims, is found in these provisions, and no others
are relied upon to support it.

The authority conferred by section 456 is " to suppress
and restrain" houses of ill-fame.   It is insisted that the pun-
ishment of the offense of keeping such houses will tend to
suppress and restrain them, and the power to punish the of-

fense is, therefore, incidentally conferred.   But this court has held that the authority conferred upon a city to suppress gambling did not authorize the punishment of keeping devices for gambling.   *City of Mt. Pleasant v. Breeze,* 11 Iowa, 399.

It was held that the authority was to suppress, not punish, gambling, and it must be exercised in such a way that the suppression will be the direct, not incidental, result of the application of the provisions of the ordinance.   The decision is not without grave objections as to the reasons upon which it is based.   But it has been accepted without question or challenge for more than nineteen years.   We ought not, at this late day, disturb it.

It may well be remarked that the power conferred may be exercised by ordinance which shall provide for the direct suppression of houses of ill-fame.   In attaining that end the ordinance may provide for closing the houses, removing the inmates, and other like proceedings.   The keepers of such houses may be made liable for the costs in such proceedings, and for fines for refusing assistance to the officers, and obedience to their lawful requirements.

III.   It is insisted by plaintiff's counsel that authority for the ordinance is found in the provision of Code, § 482, above quoted, empowering cities to make ordinances "to improve the morals and order" of their inhabitants.   There is no express authority found in the section for the cities to punish crimes in order to improve the morals of the people.

The keeping of houses of ill-fame is surely subversive of good morals, and is a crime punishable under the laws of the State.   Code, § 4013.   All other crimes are subversive of good morals.   The construction of the section under consideration contended for by counsel would authorize the cities to provide, by ordinances, for the punishment of all crimes. But this cannot be admitted.

The statute may be made effective by holding that it authorizes ordinances which will tend to improve the morals of

the inhabitants, so far as their morals may be affected by houses of ill-fame, by forbidding lewd women to reside therein, by forbidding persons to visit such houses except on lawful business, and other like prohibitions. It, therefore, cannot be claimed that the interpretation of the statute insisted upon by plaintiff's counsel is necessary in order to give it operation.

IV. Counsel for defendant insist that the legislature has not the constitutional power to confer authority upon cities to punish the commission of acts which are declared by the laws of the State to be crimes, and punishable as such. This constitutional question does not properly arise under the view we take, that the statutes in question do not confer such authority upon cities. It will not, therefore, be considered.

*The State v. Wells*, 46 Iowa, 662, has no application to the case before us. We determined, in that case, that an ordinance of a city similar to the one under which defendant was prosecuted is not in conflict with the constitution of the United States. The questions we have discussed in this opinion were not in that case, and the point decided therein is not now before us.

The judgment of the District Court is

AFFIRMED.