## CITY OF YANKTON V. DOUGLASS.

1. A complaint made to a police magistrate, under an ordinance of the city of Yankton, which declares "that any person who, within the limits of this city, shall keep and maintain a tippling shop, * * * shall upon conviction be fined," etc., in which it is charged that the defendant "at the city and county of Yankton, on the 17th day of September, A. D. 1893, with force and arms, did keep and maintain a tippling shop, * * * * within the limits of the city of Yankton, state of South Dakota, against the peace and dignity of said city of Yankton, and contrary to the form of the ordinance in such case made and provided," states facts sufficient to constitue a public offense under such ordinance. HANEY, J., dissenting.

1. When an appeal is taken from a justice's court upon questions of both law and fact, the case is tried anew in the appellate court, and no statement of the case is provided for; and in such case the appellate court cannot review alleged errors of the justice's court.

3. Improper remarks, made by counsel, on the trial of a cause, in the presence of the jury, which the jury are at once directed by the court to disregard, will not, ordinarily, constitute sufficient ground for a reversal of the judgment, as this court will presume that the jury have followed the direction of the court, and disregarded them.

4. An act may constitute a penal offense under the laws of the state and further penalties, under proper legislative authority, may be imposed for its commission by municipal laws: and the enforcement of the one would not preclude the enforcement of the other.

5. There is no conflict between the power conferred by a city charter to "prohibit and suppress tippling shops," and the probibitory liquor law of this state; and the provisions of the charter were not repealed by such law.

(Syllabus by the Judge.   Opinion filed April 9, 1896.)

Error to circuit court, Yankton county.   Hon. E. G. SMITH, Judge.

Defendant was convicted of keeping a tippling shop in violation of a city ordinance, and brings error.    Affirmed.

The facts are stated in the opinion.

*V. V. Barnes* (*Estes & Lambert* of counsel), for plaintiff in error.

The complaint was insufficient as to form and matter, and did not state an offense.    State v. Burchard, 4 S. D. 548, 57 N. W. 491.

*French & Orvis, Hugh J. Campbell,* City Attorney, *John Holman,* State's Attorney, and *Coe I. Crawford,* Attorney General, for defendant in error.

An information or a complaint for a statutory misdemeanor or a police offense, is not governed by the rules that apply to an indictment for a higher offense, either as to certainty or particularity, but much less strictness is required.    10 Am. & Eng. Encyc. Law, 576; State v. Corrigan, 24 Conn. 289; Barth v. State, 18 Conn. 439.    See, also, Bish. Stat. Cr. § 1066; Com. v. Riley, 14 Bush. 44; State v. Allen, 32 Iowa 248; State v. Freeman, 27 Iowa 333.

The same act may be an offense against a municipal corporation and a state.    Bish. Stat. Law, §§ 23, 24; Rogers v. Jones, 1 Wend. 237; State v. Bergman, 6 Ore. 341; Hamilton v. State, 3 Tex. App. 643; Maher v. State, 53 Ga. 448; Levy v. State, 6 Ind. 281; Waldo v. Wallace, 12 Ind. 569; State v. Williams, 11 S. C. 288; U. S. v. Barnhardt, 22 Fed. 290; Moore v. People, 14 How. (U. S.) 17; People v. Hanrahan, 75 Mich. 627; Cooley Const. Lim., 3d Ed., 128.

CORSON, P. J.    Defendant was convicted, in justice court, for violating a city ordinance.    Upon appeal to the circuit court, the action was tried anew, resulting in conviction and judgment against him.    He brings the case here for review upon writ of error.

It is contended that the facts stated in the complaint do not constitute an offense under the ordinance alleged to have

been violated. Omitting the title, such complaint is as follows: "August Seibert, being by me duly sworn, on oath complains and charges that the defendant, Thomas Douglass, at the said city and county of Yankton, on the 17th day of September, A. D. 1893, with force and arms then and there did keep and maintain a tippling shop, a place where intoxicating liquors were sold to be used as a beverage, within the limits of the city of Yankton, state of South Dakota, against the peace and dignity of the said city of Yankton, and contrary to the form of the ordinance in such case made and provided; and prays that the said Thomas Douglass may be arrested and dealt with according to law." The ordinance provides "that any person who, within the limits of this city, shall keep or maintain a tippling shop, or place where intoxicating liquors are sold to be used as a beverage, or shall sell any intoxicating liquors in any such tippling shop or place, shall upon conviction be fined in any sum not less than thirty (30) dollars, nor more than one hundred (100) dollars, and in addition thereto may be imprisoned not to exceed thirty days." Under a special charter the city of Yankton has power "to restrain, prohibit and suppress tippling shops, billiard tables, ten pin alleys, houses of prostitution and other disorderly houses and practices, games and gambling houses, desecration of the Sabbath, commonly called Sunday, and all kinds of indecencies." Such being its conceded authority, the ordinance must be construed with reference thereto. It cannot include what is not included in the charter. Under it the city may restrain, prohibit, and suppress tippling shops, but it is not authorized to restrain, prohibit or suppress the mere sale of intoxicating liquors. The term "tippling shop" has a well-defined legal meaning. It is a place in which liquors are sold in drams, or small quantities, and where men are accustomed to tipple. To tipple is to drink spiritous or strong drink habitually. Webst. Dict. A tippling shop is a building or room wherein intoxicating liquors are habitually sold to be drank upon the premises. Bish. St.

Crimes, § 1065; Black, Intox. Liq. § 20; And. Law Dict.; City of Emporia v. Volmer, 12 Kan. 622. We have found no well-considered definition of the term which does not include the element of drinking upon the premises. In so far as the ordinance attempts to prohibit the mere sale of intoxicating liquors, or the keeping of a place wherein such liquors are sold to be drank as a beverage elsewhere, we think it exceeds the authority of the charter, and is to that extent invalid. The clause, "a place where intoxicating liquors were sold to be used as a beverage," inserted in the complaint, not being authorized by the charter, and therefore not legally a part of the ordinance, cannot properly constitute a part of the complaint, and it will be treated as surplusage and disregarded. Without this allegation in the complaint, it is clearly sufficient. The term, "did keep and maintain a tippling shop," sufficiently defines the offense charged, as the term "tippling shop," as we have seen, has a well-understood and a well-defined meaning. Mr. Bishop, in his work on Statutory Crimes (Sec. 1065), speaking of the indictment in this class of cases, says: "The indictment is only required to charge, in the general words of the statute, if so its terms are duly covered, that, at a specified time and place, the defendant did keep a drinking house and tippling shop." The words "drinking house" add nothing to the charge, as a tippling shop includes a drinking house. In City of Emporia v. Volmer, 12 Kan. 622, a similar complaint was held good by the supreme court of Kansas.

It is further contended that the police justice erred in refusing to allow the defendant to challenge certain jurors peremptorily who were impaneled to try the case. But we do not deem it necessary to consider that question, for the reason that it is not properly before us. An appeal was taken from the justice court to the circuit court upon questions of both law and fact. In such cases no statement is made, as the case is tried anew in the circuit court. The error, if any was committed, could not have been reviewed by the circuit court and cannot

be reviewed by this court on writ of error.   The proceedings to be taken in the two classes of appeals from a justice court are fully pointed out by Secs. 6129, 6131, 6136, 6177, 6178, Comp. Laws.   See Coughran v. Wilson (S. D.) 63 N. W. 774.

It is also urged, as reversible errror, that the defendant was prejudiced by the remarks of counsel for the city in presence of the jury.   The remarks to which our attention was first called were improper, but evidently made inadvertently, without any improper motive.   The court, immediately upon its attention being called to the matter instructed the jury to disregard the remarks.   This, we think, cured the error.   The second remarks objected to seem only to have been the conclusion or opinion of counsel as to the result of the evidence.   We discover no error in these remarks.   The counsel for appellant further contends that, while the city counsel has conferred upon it power to "restrain, prohibit and suppress tippling shops," it did not possess the power or authority to pass an ordinance imposing a penalty of fine and imprisonment upon one who should violate the ordinance, and that so much of the ordinance therefore, as prescribes such a penalty is unauthorized and void. In other words, he contends that power "to restrain, prohibit and suppress" does not include the power to punish by fine and imprisonment, but only the power to pass an ordinance restraining, prohibiting or suppressing the "tippling shops" in some manner that will accomplish that purpose.   And the counsel cite Incorporated Town of Nevada v. Hutchins (Iowa) 13 N. W. 634; City of Chariton v. Barber, (Iowa) 6 N. W. 528; *In re* Lee Tong 18 Fed. 253—which seem to support his contention.   But it is insisted, on the part of the city, that the powers conferred upon the Yankton city council by its charter are unusually broad and comprehensive, and that, while the decisions referred to were proper under the charters the courts had under consideration, they are not applicable to the charter now under consideration in the case at bar.   There is much force in these suggestions.   The city charter of Yankton does seem to confer up-

on the city council of that city very large powers. The sections of the charter of the city of Yankton to which our attention has been called read as follows: Sec. 82: "When by this act, the power is conferred upon the mayor and council to do and perform any act or thing, and the manner of exercising the same is not specifically pointed out the mayor and council may provide by ordinance the details necessary for the full exercise of such power." Sec. 13: "The mayor and council of the city of Yankton shall have the care, management and control of the city, and its property and finances, and shall have power to enact and ordain, any and all ordinances, not repugnant to the organic act, and the laws of this territory, and such ordinances to alter, modify and repeal." Sec. 16: "And shall have power to regulate the police of the city, and impose fines, forfeitures and penalties, for a breach of any ordinance, and provide for the recovery and collection thereof, and in default of payment to provide for confinement in the city prison, or for hard labor in the city." The powers conferred by these sections do seem to be extensive and sweeping, and evidently are broad enough to include the power claimed. The city council not only had authority to adopt the ordinance for suppressing and prohibiting tippling shops, but to enforce such provisions by fine and imprisonment in case of failure to pay the fine. The charters in the cases cited clearly could not have had the broad and comprehensive provisions found in the charter under consideration.

This brings us to a very important and interesting question as to whether or not the adoption of the state constitution, by which the manufacture and sale of intoxicating liquors as a beverage were entirely prohibited, had the effect of repealing the provisions of the Yankton charter upon the subject of prohibiting and suppressing "tippling shops." So far as the term "restraining" is used, we think the effect of the adoption of the constitution was to supersede that clause, as the term "restrain" may include the power to restrain by a license. But,

as to the terms "prohibit and suppress," there seems to be no conflict between the charter and the state law passed to carry into effect the provisions of the constitution. An act may constitute a penal offense under the laws of the state, and further penalties, under proper legislative authority, may be imposed for its commission by municipal laws; and the enforcement of the one would not preclude the enforcement of the other. Judge Cooley, in his work on Constitutional Limitations, says such is the clear weight of authority. Cooley, Const. Lim. (5th Ed.) *199. And the learned author cites, in support of this position, a very large array of authorities. The reason for the rule above laid down is thus clearly stated by Collier, C. J., in Mayor, etc., v. Allaire, 14 Ala. 400: "The object of the power conferred by the charter, and the purpose of the ordinance itself, was not to punish for an offense against the criminal justice of the country, but to provide a mere police regulation for the enforcement of good order and quiet within the limits of the corporation. So far as an offense has been committed against the public peace and morals, the corporate authorities have no power to inflict punishment, and we are not informed that they have attempted to arrogate it. It is altogether immaterial whether the state tribunal has interfered and exercised its powers in bringing the defendant before it to answer for the assault and battery, for whether he has there been punished or acquitted is alike unimportant. The offenses against the corporation and the state, we have seen, are distinguishable, and wholly disconnected, and the prosecution at the suit of each proceeds upon a different hypothesis. The one contemplates the observance of the peace and good order of the city; the other has a more enlarged object in view—the maintenance of the peace and dignity of the state." In that case the city of Mobile, by ordinance, had prescribed that the offense of assault and battery within the city limits should be punished by a fine of $50. What the fine should be when the offense was committed in violation of the state law does not appear, but it is

quite evident the penalty was different.    If an act is permitted by the state law, it cannot be forbidden by municipal ordinance; neither can an act forbidden by the state law ordinarily be permitted or licensed by the municipal authorities.    But the penalty imposed for a punishment of the offense under the state law may be increased by a city ordinance.    Thus, by the state law of New York, a penalty of one dollar was imposed for servile labor on Sunday, and the city imposed a penalty of five dollars for the same offense.    The municipal law was held valid. Rogers v. Jones, 1 Wend. 261.    In the recent case of People v. Hanrahan, 75 Mich. 611, 42 N. W. 1124, this question was very fully considered by the supreme court of Michigan, and the conclusion reached that, if the state law and municipal law can be given full force without conflicting with each other, both must stand.

It may be proper to remark that "tippling shops," as such, are not specifically prohibited by the state prohibitory law. Undoubtedly the law includes them in some of its various provisions; but, if it does so, there is no conflict between the state law and the city ordinance.    They both seek to accomplish the same object, namely, the prohibition and suppression of the sale and use of intoxicating liquors.    The city ordinance does not purport to be exclusive.    The state law is left in full force and effect to be enforced by the officers charged with the duty of enforcing it, as well in the city of Yankton as in other parts of the state.    Whether or not a party convicted under the city ordinance may be again tried and convicted under the state law, it is not necessary now to decide.    Our conclusions are that there is no such conflict between the provisions of the city charter and the law of the state and state constitution as had the effect to abrogate or repeal, by implication, the provisions of the city charter.    We have not overlooked the cases of People v. Jaehne, 103 N. Y. 182, 8 N. E. 374, and People v. O'Neil, 109 N. Y. 251, 16 N. E. 68, cited by counsel for appellant in support of his contention.    The court of appeals of New York, in

these cases, was not considering the power conferred upon the lawmaking department of the city of New York, but was considering a section of the charter prescribing the penalty for bribery, which it was claimed, was superseded or repealed by the amendment and re-enactment of the penal law of the state, in which a different punishment had been provided for the crime of bribery. That court held that, by reason of the changes made in the state law, and other circumstances, the legislative intention to repeal the provision in the charter pertaining to the punishment of bribery was clear, and it had, in effect, repealed it. But in the case at bar we find no evidence of any intent to repeal the power conferred upon the city council of Yankton to prohibit and suppress tippling. The existence of such a power, and an ordinance adopted in pursuance thereof, are perfectly consistent with the constitution, and the prohibitory act passed under it. As before stated, there is no conflict between the two, and it seems very proper that the city should be clothed with the power to prohibit and suppress tippling shops, in the interest of good government. Whenever the state law is fully executed, there may be no necessity for the exercise of the power granted in the charter; but the fact that, under such circumstances, the power would remain dormant, does not affect the right to exercise it when the necessity for its exercise exists. Our conclusions are, therefore, that there is no error in the record, and the judgment of the circuit court is affirmed.

HANEY, J. (dissenting). It seems to me the clause, "a place where intoxicating liquors were sold to be used as a beverage," is a particular description of the place maintained by defendant, and should not be regarded as surplusage. If so, defendant did not keep a tippling house, because there cannot be a tippling house without drinking upon the premises. If such clause be stricken out, I do not think enough remains to make a good complaint. It is true Mr. Bishop, in his valuable

work, above cited, seems to except this offense from the general rules of criminal pleading; but I do not believe he is sustained either by reason or authority in so doing. I think the facts stated in the complaint do not constitute an offense under the ordinance, and for this reason the cause should be reversed.