HARRIS *vs.* THE INTENDANT AND COUNCIL OF LIVINGSTON.

[SUMMARY PROCEEDING FOR VIOLATION OF MUNICIPAL ORDINANCE.] `

1. *By-law of municipal corporation, in reference to sale of spirituous liquors, held void.*— The charter of an incorporated town gave power to its municipal authori-ties "to ordain all such ordinances and resolutions, and to make all such regulations, as may by them be deemed necessary for the control of the retailing of spirituous liquors within said town; to grant license for retail-ing of spirituous liquors within said town, upon such sum, to be paid therefor by each retailer, not to exceed $2,000 *per annum*, as said intendant and council may order ; to restrain and prohibit them, when deemed a nuisance ; and, in general, to adopt such a system of police and municipal regulation, in regard to the traffic in ardent spirits, as shall be deemed by them most conducive to public order, morality and policy, in reference to the black or colored population : " *Held*, that the term " retailing," con-strued with reference to the general policy of the law in relation to the sale of ardent spirits, meant selling in small quantities; and that, though the charter authorized the entire prohibition of *retailing*, yet an ordinance which prohibited, under a penalty, the sale of spirituous liquors *in less quantities than twenty gallons*, without a license, was unauthorized and void.

APPEAL from the Circuit Court of Sumter.

Tried before the Hon. THOMAS A. WALKER.

The appellant was fined by the municipal authorities of the town of Livingston, for a violation of a town ordinance, and took an appeal to the circuit court. On the trial in that court, as appears by the bill of exceptions, the plaintiffs read in evidence an act of the legislature, approved February 9, 1852, entitled " An act to extend the power and authority of the intendant and council of the town of Livingston," which may be found in the session acts of 1851-2, on page 336, and which is as follows :

"Be it enacted," &c., "that the intendant and council of the town of Livingston, in the county of Sumter, shall have full powers to ordain all such ordinances and resolutions, and to make all such regulations, as may by them be deemed necessary for the control of the retailing of spirituous liquors within said town; to grant license for retailing of spirituous liquors within said town, upon such sum, to be paid therefor by each retailer, not to exceed $2,000 *per annum*, as the said intendant and council may order ; to restrain and prohibit them, when deemed a nuisance ; to provide regulations for the punishment of any negro, or white person, who shall buy any species of ardent spirits, and furnish a slave ; and, in general, to adopt such a system of police and municipal regulation, in regard to the traffic in ardent spirits, as shall be deemed by them most conducive to public order, morality and policy, in reference to the black or colored population, not forbidden by the constitution and laws of this State."

The plaintiffs then read in evidence an ordinance, passed by said intendant and council on the 7th June, 1855, which was in these words : "Be it ordained," &c., "that it shall be unlawful for any person, or persons, to sell or retail any spirituous or vinous liquors, within the corporate limits of the town of Livingston, in a less quantity than twenty gallons, unless they shall first have obtained a license from the intendant and council of said town for the same; and any person violating this ordinance shall forfeit and pay a fine of ten dollars, for each and every offence, upon conviction before any member of the council; and that this ordinance shall take effect from and after the 18th day of June inst., and that it shall not apply to any licensed druggist, when sold for medical purposes."

The plaintiffs then proved, that the defendant, after said ordinance went into effect, sold in said town of Livingston one gallon of whiskey, without having first procured a license from the municipal authorities, and that for so doing he was fined ten dollars. "This was all the evidence in the cause; and thereupon the court charged the jury, that if they believed it, they must find a verdict for the plaintiffs, for said sum of ten dollars." The defendant excepted to this charge, and he now assigns it as error.

TURNER REAVIS and S. A. HALE, for appellant.

A. A. COLEMAN, *contra.*.

STONE, J.—The act of 1835, " to incorporate the town of Marion," employs almost the same language as that found in the act " to extend the power and authority of the intendant and council of the town of Livingston."—Sess. Acts 1851–2, p. 336. The former statute received a judicial construction in this court, in the case of The Intendant and Council of the Town of Marion v. Chandler, 6 Ala. 899. It was there held, that the ordinance of the intendant and council was intended to operate a prohibition of retailing; and that, as such, it was within the pale of the powers conferred by the act of incorporation. The record does not inform us what sum the Livingston ordinance prescribed as the cost of a license to retail; but we have seen that, under the above authority, it might be made prohibitory.

In this case, the ordinance prohibits a sale in less quantities than twenty gallons; and the question is presented, does the act of incorporation confer that power ? All the grants in this connection, except one after noticed, relate in terms to retailing. Is every sale, in quantity less than twenty gallons, necessarily a sale by retail ? Lexicographers place the word 'retail' as the opposite of wholesale; and if we should consult them alone, we would be left in much uncertainty on this point. Our own long continued legislation on this subject, furnishes the best exposition of the intention of the legislature. Thus defined, the business of retailing, and the keeping of a tippling house, are substantially one and the same occupation. To sell at retail, is to sell in small quantities. The general prohibition against unlicensed venders is, that they shall not sell in quantities less than one quart. There are also qualified limitations on the right to sell in quantities of a quart and upwards. We hold, that the legislature, in the act of incorporation, when they employed the terms '*retailer*' and '*retailing*,' must be presumed to have had reference to our general policy in relation to the sale of ardent spirits. The ordinance in question goes beyond that boundary, and is unauthorized and inoperative.

The general grant to the corporate authorities, " to adopt

such a system of police and municipal regulation, in regard to the traffic in ardent spirits," &c., is confined in express terms to public order, morality and policy, *in reference to the black or colored population.* This is persuasive to show that a larger discretion is conferred over the traffic with slaves, than over the general commerce in ardent spirits.

The jurisdiction of incorporated cities and towns, is not limited to the express grants of authority. They have many incidental powers.—Mayor, &c., of Mobile, v. Yuille, 3 Ala. 137; 6 Ala. 899. But these incidental powers must be german to the purpose for which the corporation was created. They will not be enlarged by construction, to the detriment of individual or public rights.—Stormfeltz v. The Manor Turnpike Company, 13 Penn. 555; March v. Commonwealth, 12 B. Monroe, 29.

The judgment of the circuit court is reversed, and the cause remanded.